IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| HEALTHBANC INTERNATIONAL, LLC and BERNARD FELDMAN; <br><br> Plaintiffs and Counterclaim Defendants, <br><br> v. <br><br> SYNERGY WORLDWIDE, INC.; NATURE'S SUNSHINE PRODUCTS, INCORPORATED; and DAN NORMAN; <br><br> Defendants and Counterclaim Plaintiffs. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS <br><br> Case No. 2:16-cv-00135-JNP-PMW <br><br> District Judge Jill N. Parrish |

Before the court is a motion to dismiss brought by defendants Synergy Worldwide, Inc., Nature's Sunshine Products, Inc., and Dan Norman (collectively, Synergy) against plaintiffs HealthBanc International, LLC and Bernard Feldman (collectively, HealthBanc). (Docket 45). Synergy argues that HealthBanc's third cause of action for constructive fraud and fifth and sixth causes of action for violations of the Utah and Federal Trade Secret Acts fail as a matter of law. This court agrees and dismisses HealthBanc's third, fifth, and sixth causes of action with prejudice.

**BACKGROUND**

HealthBanc created a recipe for a powder comprised of various grasses and other components called "the greens formula." The greens formula can be combined with water to create a nutritional supplement.

HealthBanc entered into a royalty contract with Synergy, a multi-level marketing company. The contract gave Synergy the exclusive right to distribute the greens formula in

exchange for an agreement to pay HealthBanc a fixed sum of money for each bottle of the greens formula Synergy sold. The contract required Synergy to summarize its royalty calculations and make its records regarding these calculations available to HealthBanc.

About nine years after entering into the contract, HealthBanc sued Synergy. HealthBanc alleged that Synergy had breached the contract and a covenant of good faith and fair dealing by, among other things, failing to pay royalties or to make records available. HealthBanc also asserted in its third cause of action that Synergy had assumed a position of trust and confidence and that it committed constructive fraud by failing to disclose the deficient royalty payments. Additionally, HealthBanc alleged in its fifth and sixth causes of action that Synergy violated both Utah and federal trade secret statutes by printing portions of the greens formula on the packaging of the product and by using the greens formula without paying royalties.

## APPLICABLE LAW AND LEGAL STANDARDS

A federal court exercising either diversity jurisdiction or supplemental jurisdiction "applies the substantive law, including choice of law rules, of the forum state." *BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1103 (10th Cir. 1999) (citation omitted). Utah applies "the 'most significant relationship' approach as described in the Restatement (Second) of Conflict of Laws in determining which state's laws should apply to a given circumstance." *Waddoups v. Amalgamated Sugar Co.*, 54 P.3d 1054, 1059 (Utah 2002).

Neither HealthBanc nor Synergy engaged in a Utah choice of law analysis to determine which jurisdiction's substantive law governs Synergy's fraud claim. Instead, both parties have assumed that Utah law governs this tort claim and have exclusively cited Utah's substantive law. Absent any indication to the contrary in the facts alleged in HealthBanc's complaint, this court also applies Utah's substantive law.

But this court applies federal law when determining whether dismissal of a cause of action is appropriate under rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1076 (10th Cir. 2007) ("[W]e are governed by federal law in determining the propriety of the district court's grant of summary judgment [under rule 56(c)."). Under rule 12(b)(6), a court may dismiss a complaint if it fails "to state a claim upon which relief can be granted." When considering a motion to dismiss for failure to state a claim, a court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).

## ANALYSIS

I.   **HealthBanc's Cause of Action for Constructive Fraud.**

In HealthBanc's third cause of action, it alleged that Synergy and Mr. Norman are liable for the tort of constructive fraud. HealthBanc asserted that Synergy's former president "conducted himself in a manner which inspired unreserved trust and confidence from HealthBanc in both himself and Synergy" and that both this exemplary conduct and the royalty contract "created a fiduciary or confidential relationship between HealthBanc and Synergy." [Docket 43, ¶¶ 170, 177]. HealthBanc further asserted that Synergy and its new president, Mr. Norman, betrayed this fiduciary or confidential relationship by failing to disclose that Synergy had not made royalty payments required under the contract and by withholding information regarding royalties. [Docket 43, ¶¶ 189–90].

Synergy and Mr. Norman moved to dismiss this cause of action, arguing that it is barred as a matter of law under Utah's economic loss rule. Under Utah law, "[t]he economic loss rule is a judicially created doctrine that marks the fundamental boundary between contract law, which

3

protects expectancy interests created through agreement between the parties, and tort law, which protects individuals and their property from physical harm by imposing a duty of reasonable care." *Reighard v. Yates*, 285 P.3d 1168, 1176 (Utah 2012) (citation omitted). "Thus, 'when a conflict arises between parties to a contract regarding the subject matter of that contract, "the contractual relationship controls, and parties are not permitted to assert actions in tort in an attempt to circumvent the bargain they agreed upon." ' " *Id.* (citation omitted).

Synergy and Mr. Norman contend that HealthBanc's cause of action for constructive fraud is prohibited by the economic loss rule because HealthBanc is seeking a tort remedy for breaches of duties imposed by the royalty contract—i.e. to pay royalties and to correctly report information regarding the royalty calculation. HealthBanc responds by arguing that under Utah law the economic loss rule does not apply to intentional torts such as fraud. Alternatively, HealthBanc asserts that the economic loss rule does not bar its fraud claim because Synergy and Mr. Norman had independent fiduciary duties to pay royalties and correctly report information. This court shall address each of HealthBanc's arguments in turn.

    A.    Utah's economic loss rule and the intentional torts exception.

The economic loss rule began as a products liability concept. *Grynberg v. Questar Pipeline Co.*, 70 P.3d 1, 11 (Utah 2003). Under the historic version of the rule, it required "that contract law define the remedy when the loss is strictly economic, i.e., when no damage occurs to persons or property other than the product in question." *Id.* Thus, the rule originally turned on the nature of the harm caused by a defective product. If the harm was strictly economic in nature, the contract between the buyer and the seller governed the dispute. *See E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 872–73 (1986) ("Contract law, and the law of

warranty in particular, is well suited to [product liability cases] because the parties may set the terms of their own agreements.").

The Utah Supreme Court first applied the economic loss rule outside the strict confines of product liability in a construction defect case, *American Towers Owners Association, Inc. v. CCI Mechanical, Inc.*, 930 P.2d 1182 (Utah 1996). In that case, the court followed the traditional economic loss rule and focused on the nature of the harm caused by the construction defect and determined that it was purely economic in nature. *Id.* at 1190 ("Builders who construct low quality housing that does not cause injury to persons or property may still be held liable for damages, but that liability should be defined by the contract between the parties."). In a footnote, the court cited a products liability authority and stated in dicta that "[a] plaintiff may, however, recover purely economic losses in cases involving *intentional* torts, e.g., fraud, business disparagement, intentional interference with contract, etc." *Id.* at 1190 n.11.

A few years later, the Utah Supreme Court again applied the traditional version of the economic loss rule in a dispute about defective construction designs, stating that "the economic loss rule holds that 'economic damages are not recoverable in negligence absent physical property damage or bodily injury.'" *SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*, 28 P.3d 669, 680 (quoting *American Towers*, 930 P.2d at 1189). In dicta, the Utah Supreme Court cited the footnote from *American Towers* regarding international tort liability and stated that "plaintiffs may recover purely economic losses in cases involving intentional torts such as fraud, business disparagement, and intentional interference with contract." *Id.* at 680 n.8.

In 2002, however, the Utah Supreme Court broke with the nature-of-the-harm test applied in *American Towers* and *SME Industries*. In *Hermansen v. Tasulis*, the court expressly adopted the test articulated in a Colorado Supreme Court case, holding that:

5

> The proper focus in an analysis under the economic loss rule is on the source of the duties alleged to have been breached. Thus, our formulation of the economic loss rule is that a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach *absent an independent duty of care* under tort law.

48 P.3d 235, 240 (Utah 2002) (citation omitted).

A year later, the Utah Supreme Court further developed the independent-duty test. Applying Wyoming law, the court noted in *Grynberg v. Questar Pipeline Co.* that the economic loss rule originated in products liability law, but concluded that "[f]ocusing on the character of the harm, however, made it difficult to apply the economic loss doctrine beyond the realm of products liability, where torts such as fraud and conversion exist to remedy purely economic losses in non-contractual settings." 70 P.3d 1, 11 (Utah 2003). *Grynberg* observed, however, that "many courts have successfully translated the theory by recognizing and applying the underlying premise of the economic loss doctrine: successful separation of contract and tort law requires identification of the underlying duties governing the parties' relationship." *Id.* Thus, *Grynberg* concluded that:

> Using the historical language of economic loss and alluding to products liability cases is deceptive and turns the focus away from the core reasoning of [Wyoming law]—that once there is a contract, any tort claim must be premised upon an independent duty that exists apart from the contract. All contract duties, and all breaches of those duties—*no matter how intentional*—must be enforced pursuant to contract law.

*Id.* (emphasis added).

Applying this new test, the *Grynberg* court rejected the plaintiffs' contention that the economic loss rule could not be applied to intentional torts. *Id.* at 12. Although *Grynberg* applied

6

Wyoming law, it specifically addressed the footnotes from *American Towers* and *SME Industries* regarding intentional torts and repudiated them:

> The language of *American Towers Owners Ass'n* and *SME Industries,* two Utah construction cases, relied upon the products liability-based language of economic loss. In *Hermansen v. Tasulis,* we expressly adopted the independent duty-based rule articulated [by the Colorado Supreme Court] and held that "the initial inquiry in cases where the line between contract and tort blurs is whether a duty exists independent of any contractual obligations between the parties." Since they were decided before we adopted Colorado's interpretation, and Wyoming clearly follows the independent duty [test]*,* we do not find *American Towers Owners Ass'n* and *SME Industries* persuasive authority regarding the current state of the economic loss rule in Wyoming or Utah.

*Id.* at 13 (citation omitted). Therefore, this court concludes that Utah's common law does not currently recognize a blanket intentional torts exception to the economic loss rule.[1]

B.    Utah's economic loss rule and the independent duty exception.

In cases that do not involve either a product liability claim or a construction or design defect claim, "[w]hether the economic loss rule applies depends on 'whether a duty exists independent of any contractual obligations between the parties.'" *Reighard*, 285 P.3d at 1176 (citation omitted); *accord Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 221 P.3d 234, 244 (Utah 2009) ("Where the economic loss rule is at issue, the 'initial inquiry' becomes 'whether a duty exists independent of any contractual obligations between the parties.' If we find that an independent duty exists under the law, 'the economic loss

---

[1] The Utah legislature has codified the intentional tort exception in defective design or construction cases. UTAH CODE § 78B-4-513(5). Because this case does not involve a design or construction defect, this statutory rule does not apply.

rule does not bar a tort claim . . . .'" (citations omitted)).[2] Thus, the relevant question in this case is whether Synergy owes duties that exist independent from its contractual duties under the royalty agreement.

In an attempt to establish an independent duty, HealthBanc argues that Synergy owes it fiduciary duties that exist separately from Synergy's contractual duties to accurately report and pay royalties. Whether Synergy owes independent fiduciary duties is a question of law. *See Davencourt*, 221 P.3d at 244; *Yazd v. Woodside Homes Corp.*, 143 P.3d 283, 286–87 (Utah 2006).

"To determine whether a duty arises outside of a contract, we analyze the nature of the parties' relationship." *Donner v. Nicklaus*, 778 F.3d 857, 873 (10th Cir. 2015) (applying Utah law). Utah courts have recognized that some individuals, such as real estate agents or real estate appraisers, may assume fiduciary duties pursuant to a statute or a license. *Id*. In addition, certain relationships that involve disparities in knowledge, sophistication, or bargaining power may create common-law fiduciary duties on the part of the advantaged party. *Yazd*, 143 P.3d at 286. For example, Utah courts have recognized the duty of a contractor-seller to reveal information to the purchaser of a home. *Id.* at 288.

---

[2] In 2008 the Utah Legislature enacted a statute providing that "[a]n action for defective design or construction may include damage to other property or physical personal injury if the damage or injury is caused by the defective design or construction." UTAH CODE § 78B-4-513(2). Thus in design or construction defect cases, the nature-of-the-harm test applied in *American Towers* is mandated by statute. In a construction defect case decided after this statute was enacted, therefore, the Utah Supreme Court applied both the statutory nature-of-the-harm test and the common law independent-duty test adopted by *Hermansen*. *Davencourt*, 221 P.3d at 243–49. Similarly, when analyzing a claim akin to a product defect cause of action (the sale of a home containing mold), the supreme court also applied both tests. *Reighard*, 285 P.3d at 1176–77. Because this case involves neither a construction or design defect nor a product liability claim, the nature-of-the-harm test has no application here.

HealthBanc has not identified any statutes or licenses that would give rise to a fiduciary duty in this case. Moreover, the court concludes that the arms-length business relationship between HealthBanc, a limited liability company, and Synergy, a corporation, did not create a common-law fiduciary relationship. Utah courts have not recognized a fiduciary duty between the parties to a royalty contract. Indeed, the Utah Supreme Court has held that no fiduciary relationship arose between a buyer and a seller of natural gas, noting that they were "two sophisticated business parties agreeing to buy and sell goods in a commercial contract." *Grynberg*, 70 P.3d at 13–14 (applying Wyoming law).

The California Supreme Court opinion in *City of Hope National Medical Center v. Genentech, Inc.*, 181 P.3d 142 (Cal. 2008) is also persuasive authority for the proposition that no fiduciary relationship exists between HealthBanc and Synergy. In *City of Hope*, a hospital that had developed a process for genetically engineering human proteins entered into a royalty contract with Genentech, a company that agreed to commercially exploit this process. *Id.* at 146–47. The contract provided for a royalty payment of two percent of the net sales of proteins derived from the process. *Id.* at 147–48. The hospital later sued Genentech for both breach of contract and breach of fiduciary duty, alleging that the company had shortchanged it under the terms of the contract. *Id.* at 149. The jury found for the hospital on the breach of contract and the breach of fiduciary duty claims and awarded it over $300 million in compensatory damages and $200 million in punitive damages. *Id.* at 150.

The California Supreme Court reversed the punitive damage award, holding that "a fiduciary relationship is not necessarily created simply when one party, in exchange for royalty payments, entrusts a secret invention to another party to develop, patent, and market the eventual product." *Id*. at 152, 154. In determining that a fiduciary relationship did not exist, the court

noted that the royalty contract "was between two sophisticated parties of substantial bargaining power" and that the contract stated that "the parties' relationship was not one involving agency, joint venture, or partnership, which are categories in which fiduciary obligations are imposed by operation of law." *Id.* The court also rejected the hospital's argument that the royalty contract required it trust Genentech to properly calculate the royalty, observing that "[e]very contract requires one party to repose an element of trust and confidence in the other to perform." *Id.* (alteration in original) (citation omitted).

The royalty contract between HealthBanc and Synergy likewise does not give rise to a fiduciary relationship. The agreement was between two business entities and negotiated at arms-length. And like the contract at issue in *City of Hope*, the royalty contract specifically provides that it may not "be construed to[] create a partnership, agency, joint venture or employment relationship." Having disclaimed any relationship implicating fiduciary duties between the parties, the royalty contract cannot bring about an independent fiduciary relationship.

Therefore, Synergy did not assume fiduciary duties toward HealthBanc. Absent a duty to report royalty calculations or pay royalties that exists independent from the contract, HealthBanc's constructive fraud claim is barred by the economic loss doctrine. Because HealthBanc's third cause of action is invalid as a matter of law, this court dismisses it with prejudice.[3]

---

[3] Mr. Norman argued that the constructive fraud cause of action should be dismissed as to him because he is protected by the corporate shield doctrine. Because the court dismisses this cause of action pursuant to the economic loss doctrine, this argument is moot.

## II. HealthBanc's Causes of Action for Trade Secret Violations

HealthBanc also alleged causes of action for violations of both the federal Defend Trade Secrets Act and Utah's Uniform Trade Secrets Act. HealthBanc asserts that Synergy violated these acts by printing portions of the greens formula on the packaging of the product and by using the greens formula without paying royalties. HealthBanc's trade secret claims fail as a matter of law because it did not own the alleged trade secrets.

Both the federal trade secret statues and Utah's trade secret statutes require that the plaintiff own the trade secret at the time of the alleged misappropriation. The federal Defend Trade Secrets Act provides that "[a]n *owner* of a trade secret that is misappropriated may bring a civil action under this subsection." 18 U.S.C. § 1836(b)(1) (emphasis added). Moreover the federal Act requires either (1) "acquisition of a trade secret *of another* . . . by improper means" or (2) "disclosure or use of a trade secret *of another* without express or implied consent" to make out a valid claim for misappropriation. *Id*. § 1839(5) (emphasis added). The requirements for a valid misappropriation claim under Utah's Uniform Trade Secrets Act are identical: either (1) "acquisition of a trade secret *of another* . . . by improper means" or (2) "disclosure or use of a trade secret *of another* without express or implied consent." UTAH CODE § 13-24-2(2) (emphasis added). Thus, a party may not be liable for misappropriation under either Act unless it takes, discloses, or uses a trade secret belonging to someone else.

In this case, Synergy held full title to any trade secrets inherent to the greens formula. The royalty agreement signed by both Synergy and HealthBanc states that "[i]n consideration of the sum of $1.00 payable by Synergy to HealthBanc upon the execution of this Agreement, HealthBanc hereby transfers and assigns to Synergy and its successors and assigns, HealthBanc's entire rights, title, and interest in and to the Greens Formula, including, without limitation, all

patent rights and other intellectual property rights of any kind." This provision transferred all intellectual property rights—including trade secret rights—to Synergy. Thus, Synergy cannot be liable for trade secret misappropriation of the greens formula because it did not use or disclose the trade secret "of another" as required by the federal and Utah Acts.[4]

The court, therefore, dismisses HealthBanc's fifth and sixth causes of action for trade secret violations with prejudice.

## CONCLUSION

HealthBanc's causes of action for constructive fraud and trade secret violations are invalid as a matter of law. Accordingly, the court hereby GRANTS Synergy's motion to dismiss HealthBanc's third, fifth, and sixth causes of action. (Docket 45). Dismissal is with prejudice.

Signed September 22, 2016.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge

---

[4] At the hearing on this motion to dismiss, counsel for HealthBanc noted that Synergy has asserted a counterclaim for fraud in the inducement and that Synergy has alleged that it is entitled to the remedy of rescission of the royalty contract. Counsel argued that if Synergy successfully pleads this cause of action and eventually prevails on its rescission claim, the greens formula trade secret will revert back to HealthBanc. But even if this comes about, Synergy owned the greens formula trade secret at the time that HealthBanc alleges Synergy misappropriated it. Rescission of the royalty contract cannot change that fact.